# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

---

**Dwayne Morgan, Clint Robinson,**
**Paul Robinson, Michael Owens,**
**Marques Stewart, Cornelius Buford,**
**and Shaun Saunders**

**On behalf of themselves and**
**all others similarly situated**

    **Plaintiffs**

    **v.**                                          **Case No.** 16-CV-1283

**CSW Inc.**
**Northern Concrete Construction Inc.**

    **Defendant.**

---

# COMPLAINT

---

Plaintiffs, by their attorneys, for their complaint against Defendant state as follows:

1. This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, current and former employees of the Defendants Northern Concrete Construction Inc. ("Northern Concrete") and CSW Inc. ("CSW") to seek redress for the Defendants' violations of the minimum wage and overtime provisions of the FLSA, and the minimum wage, overtime, travel pay, and full wage payment guarantees of Wisconsin law. Additionally, the Named Plaintiffs have filed administrative charges of race discrimination against the Defendants for race discrimination, and would anticipate amending

1

this complaint to add the claims for race discrimination once they have received a right to sue letter.

## JURISDICTION AND VENUE

2.  This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3.  This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

4.  This Court has personal jurisdiction over Northern Concrete because it resides within the Green Bay Division of the Eastern District of Wisconsin; while the Court has personal jurisdiction over CSW because it purposefully sent its employees to work for a contractor that is based in, and performs work in, the area covered by the Green Bay Division of the Eastern District of Wisconsin, so that it can reasonably be expected to be sued there for wage theft from the Plaintiffs during time periods when the Plaintiffs worked in Wisconsin.

5.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) & (2) because both defendants reside in the Green Bay Division of the Eastern District of Wisconsin within the meaning of 28 U.S.C. §1391(c)(2), and a substantial part of the events giving rise to the claims described herein occurred in this district.

## THE PARTIES

6.  Plaintiffs Dwayne Morgan, Kendell Holmes, Clint Robinson, Paul Robinson, Michael Owens, Marques Stewart, Cornelius Buford, and Shaun Saunders are currently residents of, and work within, the State of Wisconsin. During the time periods covered by the

Complaint the Plaintiffs were employees of Defendant CSW Inc., and were referred by Defendant CSW Inc. to perform work in Wisconsin for Defendant Northern Concrete. One or more of the Plaintiffs also previously worked for CSW Inc. for clients other than Northern Concrete. Copies of FLSA consent forms signed by each Plaintiff, along with a FLSA consent form signed by former Northern Concrete direct hire employee Dante Davis, are attached to this Complaint.

7. Defendant CSW Inc. ("CSW") is a Mississippi corporation with a principal place of business located at 9200 Old Walnut Road in Ocean Springs, Mississippi. CSW recruits, hires, and then refers employees to work on construction projects throughout the country, often located many hours away from both its offices in Mississippi and the employees' homes. Upon information and belief, and given the substantial turnover of employees from project to project, CSW has employed and referred at least 50 persons to work for its client construction companies during the past three years.

8. Defendant Northern Concrete is a Wisconsin corporation with a principal place of business located within this district at 6601 County Road R in Denmark, Wisconsin. Northern Concrete employs both directly hired employees and employees referred to it by staffing agencies, such as CSW to perform work on construction projects throughout the State of Wisconsin. During the past three years Northern Concrete has employed at least 50 directly hired and referred employees on its jobsites.

9. Both Northern Concrete and CSW are employers within the meaning of Wis. Stat. §109.03(1). CSW is an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203, by sending its employees throughout the country to work on construction

3

projects. Northern Concrete is similarly an employer within the meaning of the FLSA given that it contracts with referral agencies outside the State of Wisconsin for manpower, purchases equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin, and enters into contracts directly or indirectly with non-Wisconsin suppliers and customers. At all relevant times, Northern Concrete and CSW have each had annual gross volume of business of at least $500,000.

## FACTS

10. Each of the Plaintiffs was hired by CSW to work as referred employees on construction projects for CSW's construction-industry clients.

11. Throughout a substantial portion of 2016, CSW referred Plaintiffs to work for Northern Concrete on construction projects located throughout the State of Wisconsin. Just like Northern Concrete's own direct hire employees, each Plaintiff was assigned a straight time wage rate that applied to all of the employee's work on non-prevailing wage jobsites.

12. During the time period when the Plaintiffs worked on Northern Concrete projects, CSW remained responsible for employer functions such as paying Plaintiffs' wages and per diems, deducting motel costs from the Plaintiffs' paychecks, assisting Plaintiffs' in finding motel accommodations while they worked on projects in Wisconsin, handling reports of Plaintiffs' work-related injuries, and answering Plaintiffs' phone calls concerning issues and complaints unrelated to their jobsite work.

13. On Northern Concrete jobsites, however, Northern Concrete's foremen and supervisors were exclusively responsible for supervising Plaintiffs' work. Northern Concrete told Plaintiffs when to begin and finish working each day, what items they needed to have with

4

them on their first day of work, what clothing and personal protective equipment to wear on its jobsites, what work to perform during the day, and how they should perform the work assigned. Northern Concrete also required the Plaintiffs to call a Northern Concrete supervisor if they were to be tardy or absent. CSW did not have any representatives on the jobsites where the Plaintiffs worked for Northern Concrete.

14. CSW required each Plaintiff to sign an "Employment Agreement" acknowledging that the employee agreed to work under the direction of Northern Concrete and that the employee worked for CSW's customer, Northern Concrete.

15. Immediately prior to the first day Plaintiffs were engaged to perform work at a jobsite for a CSW client, Plaintiffs drove from their homes to a designated motel near the CSW client's jobsite. The motels and the job sites were located away from Plaintiffs' home communities. The drive from Plaintiffs' homes to the motel often took many hours and generally occurred during hours when the Plaintiffs would be working on the jobsite for the CSW's client either during the same week, or during the immediately succeeding workweek. The Defendants would not count the time Plaintiffs spent driving from their homes to the designated motel as hours worked nor pay the Plaintiffs for driving from their homes to the motel near the jobsite.

16. Similarly, when the Plaintiffs completed their assignment for a CSW client, they would drive from the last jobsite that they worked on for the CSW client, or their motel, back to their homes. The drive often took many hours, and would mainly occur during hours, when the Plaintiffs would be working on the jobsite for the CSW client either during the same week, or during the immediately preceding week. The Defendants would not count the time Plaintiffs

5

spent driving from the jobsite to their home communities as hours worked nor pay the Plaintiffs for such driving time.

17. While the Plaintiffs performed work for a CSW client at a jobsite located away from their home communities, Plaintiffs were responsible for paying their own motel costs if they chose to stay near the jobsite and away from their home communities over the weekends. The Plaintiffs as a result would frequently drive back home on the weekends, during hours when they were working on the jobsite during the immediately preceding workweek. Defendants never paid the Plaintiffs for their drive time home on the weekends.

18. Upon information and belief, the Defendants sometimes did not count as hours worked time spent by the Plaintiffs to travel from one jobsite to another jobsite, where they performed work immediately after arriving at the second jobsite.

19. Both the direct hire employees and referred employees of Northern Construction, including the Plaintiffs and opt-in Plaintiff Davis, frequently worked 50 hours or more per week on jobsites for Northern Construction. Direct hire and referred employees of Northern Construction, including the Plaintiffs and opt-in Plaintiff Davis, were paid for fewer hours than the number of hours that they actually worked on jobsites.

20. Instead of issuing paychecks to its direct-hire and referred employees, the Defendants would instead directly deposit employees' wages onto pre-paid debit cards, often without obtaining the employees' prior consent to the arrangement. Defendants did not issue paper check stubs or earning statements to Plaintiffs.

21. In addition, when the Plaintiffs were paid for more than 40 hours worked per week, they were sometimes paid only their regular, straight-time rate rather than the overtime

6

premium rate of time and one-half the regular hourly wage rate, for those hours worked over 40 hours worked per week, for which they received payment.

22. With the exception of Plaintiff Buford, while the Plaintiffs worked for the Defendants, Defendants paid for the motel rooms during the workweek but deducted from the Plaintiffs' paychecks an amount equal to the maximum allowance for lodging permitted by Wisconsin minimum wage laws.

23. Defendants did not pay for Plaintiffs' motel rooms on weekends, so that the Plaintiffs either had to pay the costs of the motel rooms out of their own pockets or had to incur the costs of long distance travel back to their homes.

24. CSW issued to each Plaintiff a pre-paid debit card as the exclusive method by which Plaintiffs could access their wages. Plaintiffs had no choice but to use the pre-paid debit card to cover their daily living expenses while they worked at CSW's customers' jobsites. Plaintiffs were charged a fee, of up to several dollars, each time that they accessed their wages using their debit cards.

25. Upon information and belief, paragraphs 22-24 of the Complaint describe CSW's standard practices for all of the employees that it refers to all clients, rather than only those employees that it referred to work for Northern Concrete.

26. Throughout most of the time period that he worked for the Defendants, Plaintiff Buford was required to pay the entire costs of the motel room throughout the workweek, because upon information and belief CSW objected to Mr. Buford having his family stay with him in the motel room.

7

27. After taking into account the full number of jobsite and compensable travel hours that Plaintiffs worked, and Plaintiffs' motel costs, travel costs, and debit card access costs, the Plaintiffs sometimes did not receive, on average, the minimum wage for all of their compensable hours worked throughout the workweek.

28. When the Plaintiffs were first hired by CSW to work for Northern Concrete, or were first referred by CSW to work for Northern Concrete, they were told that their motel rooms would be fully paid and that they would receive a per diem of $80 per workday. The Plaintiffs accepted these benefits as a term and condition of employment when they accepted the hire/referral to work for Northern Concrete. CSW's promises to the employees are binding upon Northern Concrete, given that CSW acted as Northern Concrete's agent in procuring Plaintiffs' services.

29. CSW deducted from Plaintiffs' earned wages the maximum lodging allowance permitted by Wisconsin minimum wage laws, so that in effect the Plaintiffs did not receive fully paid for motel rooms; and reduced their per diem from $80 to $30 per workday, without ever communicating the changes to any of the Plaintiffs.

30. Neither Defendant ever informed the Plaintiffs that they had to accept the motel cost deductions from their wages or the reduction of their per diem as a condition of their continued employment with the Defendants.

31. After the Plaintiffs terminated their employment with the Defendants, the Defendants either failed to pay, or grossly underpaid, the wages earned by the Plaintiffs during their final week or two weeks of employment.

## COLLECTIVE ACTION ALLEGATIONS

32. Named Plaintiffs bring their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated Plaintiffs who were victimized by CSW's uniform policies of failing to count as hours worked any of the employee's travel hours between their homes and jobsites located away from their home communities; and failing to determine whether the Plaintiffs received the minimum wage after taking into account their work expenses, such as motel costs, travel costs, and pre-paid debit card access costs.

33. Named Plaintiffs bring their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated Plaintiffs who were victimized by the Defendants' uniform policies of paying their employees for fewer hours than the actual number of hours that they worked on the jobsites; failing to pay employees overtime premium pay of time and one half the regular hourly wage rate for all of the hours worked over 40 per week on jobsites; and failing to pay their employees for travel that was all within the workday.

34. The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to the Named Plaintiffs and have claims that are similar to their first claim for relief.

35. The claims of the Named Plaintiffs are representative of the claims of members of the FLSA Class in that such employees were hourly employees, worked for the Defendants, and

have suffered both the under-counting of their overtime hours worked, and have suffered minimum wage and overtime violations as a result of the Defendants' uniform policies.

## CLASS ALLEGATIONS

36. Named Plaintiffs seek to represent a class of all current and former employees of the Defendants who fall within the following class description, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All employees of Northern Construction who, on or after September 26, 2014, either were not paid the full amount of promised straight time and overtime pay for all of their hours on jobsites, or were not paid the full amount of straight time and overtime pay for traveling between jobsites, and working at the second jobsite following arrival.

37. The persons in the class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least 50 members in the proposed class. Since Northern Concrete employed and employs both directly-hired employees and employees referred by referral agencies located outside the State of Wisconsin, the members of the proposed class are widely scattered, thus making joinder even more impractical.

38. There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class, including, but not limited to:

(a). Whether Northern Concrete is required to count as hours worked each and every hour that the Plaintiffs worked on the jobsites;

(b). Whether Northern Concrete is required to count as hours worked time spent by the Plaintiffs travelling between jobsites, when they worked at the second jobsite following arrival;

(c). Whether Under Wisconsin law the Plaintiffs must received the promised wage rate, rather than the minimum wage, for each and every hour that they worked on the jobsite;

10

(d). The appropriate rate of pay for the Plaintiffs for their time spent traveling between jobsites;

(e). Whether under Wisconsin law the Plaintiffs are entitled to be paid at a rate equal to 1.5 times their straight time wage rate, for each and every hour worked over 40 hours per week;

(f). The appropriate method of computing overtime pay under Wisconsin law.

39. Named Plaintiffs' claims are typical of those of the Wisconsin Unpaid Wage Class. Named Plaintiffs, like other Wisconsin Unpaid Wage Class members, were subjected to Northern Concrete's uniform policies of paying employees for fewer hours than the full number of hours that they worked, paying employees fewer hours of overtime pay than their full number of hours worked over 40 per week, and failing to either count as hours worked, or pay employees for time spent traveling between two jobsites, when they then performed work at the second jobsite.

40. Named Plaintiffs will fairly and adequately protect the interests of the Wisconsin Unpaid Wage Class and has retained counsel experienced in complex wage and hour litigation.

41. Class certification of Count II of the Complaint is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the Wisconsin Unpaid Wage Class predominate over any questions affecting only individual members of the Wisconsin Unpaid Wage Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

42. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The

11

damages suffered by the individual Wisconsin Unpaid Wage Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's pay practices.

**Count I.     Claim for Minimum Wage and Overtime Pay Under the Fair Labor Standards Act.**

43.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 42 of the Complaint.

44.     Defendants violated the Fair Labor Standards Act when they failed to count as hours worked time spent by Plaintiffs traveling between their homes and jobsites located away from their home communities.

45.     Defendants violated the Fair Labor Standards Act when they failed to count as hours worked time spent by Plaintiffs travelling between the jobsite and their homes on weekends, when the trips were primarily for the Defendants' benefit given that the Plaintiffs would be responsible for their own motel costs if they chose to stay near the jobsite away from their home communities during weekends.

46.     Defendants violated the Fair Labor Standards Act when they failed to count as hours worked time spent by their employees traveling between jobsites, where they performed work at the second jobsite after arrival at that site.

47.     By failing to count as hours worked time spent by the Plaintiffs performing work as described in paragraphs 44-46 of the Complaint, and by failing to count as hours worked all hours worked by the Plaintiffs on jobsites, the Defendants failed to pay to the Plaintiffs overtime pay for all of their hours worked over 40 per week, in violation of 29 U.S.C. §207.

48. Once both all of the Plaintiffs' compensable hours worked during the workweek, and their unavoidable expenses incurred for their work such as motel costs, travel costs, and debit card access fees are taken into account, the Plaintiffs did not receive the minimum wage free and clear on average during each and every week that they worked for the Defendants, in violation of 29 U.S.C. §206.

49. Since Defendants did not have any grounds, let alone reasonable grounds, for believing that policies excluding travel hours as hours worked, overtime, and minimum wage policies complied with the FLSA, the Plaintiffs are entitled to 100% liquidated damages for all minimum wage and overtime pay that the Defendants owe to them.

50. Plaintiffs are also entitled to application of the three year statute of limitations for the Defendants' willful violations of the FLSA given their general knowledge of their obligations to pay minimum wage and to pay overtime pay for hours worked over 40 hours per week.

51. Plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against the Defendants.

**Count II.    Claim for Straight Time and Overtime Pay Under Wisconsin Law.**

52. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 51 of the Complaint.

53. Defendants established a regular pay rate for each of the Plaintiffs for their hours worked on non-prevailing wage jobsites.

54. Defendants did not establish a lower pay rate for each of the Plaintiffs for their travel hours worked that are compensable under Wisconsin law.

13

55. Plaintiffs were not paid for some of their hours worked while on the jobsites, while traveling between jobsites where they worked on the second jobsite after arrival there, and while traveling between their homes and a jobsite/motel located in Wisconsin and away from their home communities.

56. Defendants breached their promises to the Plaintiffs when they charged the Plaintiffs for a portion of their motel costs during the workweek; and reduced the per diem payment from $80 per workday to $30 per workday.

57. Even if the Plaintiffs were aware of the changes to their motel cost payments and per diems, the reduction in Plaintiffs' motel and per diem benefits are not supported by consideration and, therefore, are not enforceable because the Plaintiffs were never told by the Defendants that their continued employment was conditioned upon their acceptance of the reductions.

58. Defendants violated Wis. Stat. §109.03(1) and (5) by failing to pay to the Plaintiffs straight time wages equal to their established rate for all of their jobsite and compensable travel time worked in Wisconsin, and by failing to pay to the Plaintiffs the full amount of motel costs and per diem payments promised to them.

59. Defendants violated Wisconsin minimum wage laws by failing to pay to the Plaintiffs, free and clear, the minimum wage for each and every hour that they worked during the workweek, once both the full number of compensable hours worked and their necessary expenses incurred through working for the Defendants are taken into account.

14

60     Defendants violated Wisconsin overtime laws by failing to pay to the Plaintiffs, at a rate equal to 1.5 times their establishes straight time rate, for each and every hour that they worked over 40 hours per week.

61.    Plaintiffs may file suit to recover minimum and overtime wages required by the Wisconsin Administrative Code through Wis. Stat. §109.03(1) and (5).

62.    Defendants additionally violated Wis. Stat. §109.03(2) when they failed to pay to the Plaintiffs the full amount of wages owed to them, following their termination of employment from the Defendants. The Plaintiffs may sue to recover their wages post-termination through Wis. Stat. §109.03(5).

63.    By filing a lawsuit against Defendants pursuant to §109.03(5), the Plaintiffs become eligible to recover 50% increased damages authorized by Wis. Stat. §109.11(2)(b), and their reasonable attorneys fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1.     Finds that the Defendants are liable to the Plaintiffs for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2.     Finds that the Defendants are liable to the Plaintiffs for all unpaid straight time and overtime wages that they are owed under Wisconsin law, plus 50% increased damages, and their attorneys fees and costs arising out of the Plaintiffs' claims under Wisconsin law;

3.     Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

15

Submitted this 26nd day of September, 2016.

                                        /s/Yingtao Ho_____
                                        Yingtao Ho
                                        Sara Geenen
                                        Christopher Ahrens
                                        THE PREVIANT LAW FIRM, S.C.
                                        Attorney for Plaintiffs
                                        310 West Wisconsin Avenue, Suite 100MW
                                        Milwaukee, WI   53203
                                        414-271-4500 (Telephone)
                                        414-271-6308 (Fax)
                                        Email: yh@previant.com