UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DWAYNE MORGAN, et al.,

        Plaintiffs,

v.                                                             Case No. 16-C-1283

CSW INC, et al.,

        Defendants.

## ORDER GRANTING MOTION TO INVALIDATE SETTLEMENTS

        Plaintiffs Dwayne Morgan, Clint Robinson, Paul Robinson, Michael Owens, Marques Stewart, Cornelius Buford, Shaun Saunders, Daunte Davis, and Kendall Holmes brought this action on behalf of themselves and all other persons similarly situated against Defendants CSW, Inc. and Northern Concrete Construction, Inc. ("Northern Concrete"), alleging violations of the Fair Labor Standards Act ("FLSA") and Wisconsin Wage and Hour Law. The FLSA claim is brought as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The Wisconsin wage and hour claim is brought as an "opt-out" Rule 23 Class Action. Fed. R. Civ. P. 23. The amended complaint alleges that the plaintiff employees were employed directly by CSW, a Mississippi corporation that recruits and hires construction workers to work on construction projects throughout the country. During the relevant time period, the plaintiff employees worked under a contract between CSW and Northern Concrete at Northern Concrete's Wisconsin job sites. Plaintiffs allege that they were joint employees of both CSW and Northern Concrete, and that both defendants are jointly and severally liable for violations of federal and state laws governing minimum wages. CSW is currently unrepresented and has failed to answer the amended complaint, though

plaintiffs have not moved for default. Northern Concrete denies liability as a joint employer and claims that CSW contractually agreed to assume full responsibility for all human resources functions.

Currently before the court is a motion to invalidate the alleged settlements made without court approval between CSW and five of the named plaintiffs—Paul Robinson, Clint Robinson, Shaun Saunders, Michael Owens, and Cornelius Buford (collectively the "Withdrawal Plaintiffs")—and to issue a court-authorized notice that the Withdrawal Plaintiffs remain a party in the lawsuit. Also before the court is plaintiffs' motion to approve a settlement reached between plaintiffs' counsel and CSW and for leave to withdraw all claims against CSW pursuant to that settlement. Northern Concrete opposes both motions. For the reasons set forth below, the motion to invalidate the private settlements will be granted. The motion for approval of the settlement reached by plaintiffs' counsel with CSW will be set on the court's calendar for hearing.

## BACKGROUND

On September 29, 2016, Plaintiffs Dwayne Morgan, Clint Robinson, Paul Robinson, Michael Owens, Marques Stewart, Cornelius Buford, and Shaun Saunders filed this action on behalf of themselves and all others similarly situated. Compl., ECF No. 1. At all times relevant, the plaintiffs were employees of CSW and were referred by CSW to perform work in Wisconsin for Northern Concrete. Plaintiffs alleged violations of the minimum wage and overtime provisions of the FLSA, and the minimum wage, overtime, travel pay, and full wage payment guarantees of Wisconsin law. Each named plaintiff signed a consent form in which they opted in to participate as a named plaintiff in the lawsuit against CSW and Northern Concrete. ECF No. 1-1 at 7–8. Kendell Holmes, though not originally named as a plaintiff, opted into the action on December 19, 2016. ECF No. 18.

Clint Robinson, Paul Robinson, and Shaun Saunders contacted plaintiffs' counsel in November 2016 seeking to withdraw from this lawsuit. Ho Decl., ECF No. 29, ¶ 2. Plaintiffs' counsel sent the three named plaintiffs withdrawal forms on November 29, 2016 and the three named plaintiffs executed the forms the same day. ECF Nos. 53-2, 53-3, 53-4. Michael Owens separately contacted plaintiffs' counsel requesting to withdraw and executed his withdrawal on December 6, 2016. ECF No. 53-5. On January 18, 2017, Cornelius Buford met with plaintiffs' counsel and requested money. Ho Decl. ¶ 5. When he was told that the law firm could not pay him to be a plaintiff or class representative, Buford left the meeting and sent a text message to another attorney at the firm indicating he wished to withdraw from the lawsuit. *Id.* Buford faxed a withdrawal form to plaintiffs' counsel on January 19, 2017 despite not being provided with a withdrawal form. *Id.* at ¶ 6. CSW President Brad Lott contacted plaintiffs' counsel the same day to confirm that Buford's withdrawal form had been received. *Id.* Plaintiffs' counsel noted in a letter to Clint Robinson, Paul Robinson, and Shaun Saunders that he had not been provided with any explanation as to why the Withdrawal Plaintiffs were seeking to withdraw from the lawsuit. ECF No. 53-1 at 2.

On December 6, 2016, Marques Stewart received a telephone call from "T," an individual he knew to be a CSW representative. Stewart Decl., ECF No. 30, ¶¶ 3–4. T offered Stewart $200 in exchange for dropping the lawsuit against CSW and Northern Concrete. *Id.* at 4. T said that other named plaintiffs had agreed to drop the lawsuit after receiving a few hundred dollars in cash payments from CSW. *Id.* T also contacted Dwayne Morgan on several occasions and indicated that Brad Lott asked him to act as an intermediary on behalf of CSW. Morgan Decl., ECF No. 31, ¶ 2. T offered Morgan new employment with CSW in exchange for his agreement to drop the lawsuit and again stated that several other plaintiffs had either accepted an offer of employment or payment in

3

exchange for dropping the lawsuit. *Id.* at ¶ 3. After Morgan told T he would agree to drop the lawsuit in exchange for $600, T informed Morgan he would first need to speak with Lott. *Id.* at ¶¶ 4–5. T then told Morgan that the most he could recover through the lawsuit was $84 but that Lott would pay him $500 to drop the lawsuit or $1000 if he convinced Kendell Holmes to also drop the lawsuit. *Id* at ¶¶ 5–6.

As of the date of this order, plaintiffs' counsel has not submitted the Withdrawal Plaintiffs' withdrawal forms to the court. Counsel contends, on behalf of the non-withdrawal plaintiffs, that the Withdrawal Plaintiffs only sought to withdraw from the litigation because they first agreed to private settlements with CSW. Plaintiffs' counsel filed this motion to invalidate the alleged settlements as improper attempts to release FLSA and Wisconsin law claims without court approval. Northern Concrete asserts that the motion should be denied because the Withdrawal Plaintiffs only used the withdrawals drafted by plaintiffs' counsel—not private settlement contracts or releases which waive an employee's right to receive wages required by law.

In the meantime, the non-withdrawal plaintiffs have reached their own settlement with CSW and have filed a motion to withdraw all of their claims against CSW subject to the following conditions: (1) CSW will make an aggregate payment of $1,600 to plaintiffs; (2) CSW will voluntarily provide the plaintiffs information concerning the extent of control that Northern Concrete exercised over the men referred by CSW to work for Northern Concrete; and (3) CSW will provide plaintiffs current contact information for the men that CSW sent to work for Northern Concrete. Northern Concrete opposes the proposed settlement on the ground that counsel for plaintiffs has not provided the information the court needs in order to approve the settlement with CSW, that CSW has failed to comply with the requirements for settlement of collective FLSA and Rule 23 Class actions, and

4

that the settlement encourages collusion between plaintiffs and CSW and would be prejudicial to Northern Concrete.

## ANALYSIS

### A. Motion to Invalidate Settlements

Plaintiffs argue that the withdrawals executed by Clint and Paul Robinson, Saunders, Owens, and Buford were filed as a condition of private settlements between the Withdrawal Plaintiffs and CSW. Although those plaintiffs did not provide the underlying reasons for their withdrawals, a CSW representative allegedly told Morgan and Stewart that other named plaintiffs had accepted CSW's offer of either payment or employment in exchange for dropping all claims against CSW and Northern Concrete. Plaintiffs assert that any settlement agreements between the Withdrawal Plaintiffs and CSW must be invalidated for the lack of court approval.

Federal Rule of Civil Procedure 41(a)(1)(A) permits a plaintiff to voluntarily dismiss his or her action without a court order subject to "an applicable federal statute." The issue here is whether the FLSA is an applicable federal statute under Rule 41 that would require court approval before a plaintiff can dismiss an action. The FLSA was designed "to protect certain groups of the population from substandard wages and excessive hours" and established minimum wages and maximum hours standards in recognition of the unequal bargaining power between employers and employees. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945). The underlying policy considerations of the FLSA forbid the waiver of basic minimum and overtime wages under the Act as well as waiver of an employee's right to liquidated damages. *Id.* at 707.

The Seventh Circuit has not yet determined whether the FLSA is an applicable federal statute under Rule 41, but it has characterized the FLSA in dicta as a federal law that "either forclose[s]

private settlements or require[s] their supervision by a public official." *Dye v. Wargo*, 253 F.3d 296, 302 (7th Cir. 2001). The Second Circuit has explicitly held that "in light of the unique policy considerations underlying the FLSA," the FLSA is within Rule 41's applicable federal statute and that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Although the Second Circuit did not resolve the question of whether a dismissal without prejudice requires court approval under Rule 41, a district court in Florida has held that a stipulated dismissal of a FLSA action requires court approval for any settlements regardless of whether the dismissal is with or without prejudice. *Turner v. Interline Brands, Inc.*, Case No. 3:16-CV-646-J-39PDB, 2016 WL 7973120, at *3 (M.D. Fla. Nov. 7, 2016). The court reasoned that "[a]bsent judicial review of a settlement agreement it is impossible to ensure that an employer has not improperly exercised the marked advantage it enjoys over its employees in terms of bargaining power." *Id.*

Northern Concrete argues that the cases cited by plaintiffs involve the release of claims, a dismissal, or a contractual agreement, all of which would serve to bar future litigation of the claim. It asserts that plaintiffs have not offered evidence that the Withdrawal Plaintiffs entered into any settlement agreements with CSW and, to the extent that they have, the Withdrawal Plaintiffs have only submitted withdrawals—nothing that requires dismissal of their claims with prejudice. In other words, nothing in CSW's various agreements with the Withdrawal Plaintiffs would prevent the Withdrawal Plaintiffs from re-asserting their claims at a later date. Northern Concrete further claims that because the plaintiffs' claims against CSW and Northern Concrete involve work done in 2016, a withdrawal is not a *de facto* release of claims that would essentially bar future litigation under the

6

statute of limitations. Finally, Northern Concrete argues that the court should not force an unwilling plaintiff to participate in litigation from which the plaintiff seeks to withdraw.

The type of conduct alleged here—an employer's representative directly contacting each individual employee involved in a lawsuit, suggesting that the employee's claim is only worth a small amount, and then offering a larger cash payment or employment in exchange for withdrawing all claims against the defendants—illustrates the unequal bargaining power between employers and employees and appears to be exactly the type of conduct the FLSA requirement for judicial settlement approval was designed to prevent. Plaintiffs have submitted sufficient evidence for the court to conclude it is likely that the Withdrawal Plaintiffs' actions were the result of private settlement agreements with CSW. Although the withdrawals sent to plaintiffs' counsel do not necessarily bar the Withdrawal Plaintiffs from re-asserting these claims at a later date, it is unclear what, if any, promises were made to CSW in exchange for its payment or offer of employment. *See Turner*, 2016 WL 7973120, at *3 ("In the case at hand, the parties have, thus far, prevented the Court from any review of their settlement agreement, an agreement which may act as a bar to any future litigation arising from Plaintiff's claim. The potential of this bar, if enforceable, would have the practical effect of transforming Plaintiff's dismissal without prejudice into one with prejudice.") (emphasis in original). The court must therefore examine any settlement offers to ensure that CSW and Northern Concrete have not taken advantage of the Withdrawal Plaintiffs' weaker bargaining position.

Invalidating the Withdrawal Plaintiffs' settlements also does not necessarily force unwilling plaintiffs to continue litigating this matter. The Withdrawal Plaintiffs may ultimately determine they do not wish to pursue this matter, but they must make that determination free from the temptation of unauthorized settlement offers. The risk presented from secret bargaining in cases such as this is

7

not that a named plaintiff decides he does not want to participate in a lawsuit—it is that the plaintiff's decision to drop the lawsuit would be the result of unlawful pressure by the employer. After the Withdrawal Plaintiffs receive notice that their withdrawals are invalid and that they remain parties to this lawsuit, they remain free to withdraw from the case subject to either proof that their decision to withdraw was not the result of a settlement agreement with CSW or, if it was, approval of the settlement by the court.

Accordingly, the motion to invalidate any settlements between CSW and Paul Robinson, Clint Robinson, Shaun Saunders, Michael Owens, and Cornelius Buford is granted. Plaintiffs attached to their motion a proposed notice which would notify the Withdrawal Plaintiffs that any settlements of their FLSA claims have been invalidated and that they remain plaintiffs in this case. That notice is approved with one addition. It should include a statement advising the individual Withdrawal Plaintiffs that they can request court approval of the settlements they reached with CSW by filing with the court a written motion requesting court approval and explaining why they believe the settlement is fair and reasonable. The motion should also include the Withdrawal Plaintiff's address and a telephone number where he can be reached so that the court can conduct a telephone hearing on the request in the event further information is required. With that addition, the proposed notice submitted by counsel should be sent to the plaintiffs who sought to withdraw from the action.

**B. Motion to Approve Settlement of FLSA Claims**

Plaintiffs also request court approval of the proposed settlement agreement between plaintiffs' counsel and CSW. Northern Concrete raised numerous objections to the proposed settlement, claiming it was unfair both to Northern Concrete and the settling plaintiffs. Plaintiff's reply provided a response to Northern Concrete's objections, but without an opportunity for Northern Concrete to

8

reply. The court remains uncertain as to the potential damages, how they were calculated and the effect of a settlement with CSW on the Collective and Class actions against Northern Concrete.

It appears, for example, that the plaintiff employees would have a stronger claim than Northern Concrete against the principals of CSW, even without piercing the corporate veil, given the provisions of the FMLA that allow direct actions against supervisors directly responsible for the violations. *See* 23 U.S.C. § 203(d); *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001). Although Northern Concrete has obtained a default judgment as to liability against CSW on its cross claims for indemnity, contribution, compensatory and punitive damages and attorneys fees, its judgment will be of little value if, as plaintiffs' counsel contends, CSW is insolvent. It is not clear whether Northern Concrete could recover against CSW's principals absent evidence sufficient to overcome the presumption that the officers and shareholders of a corporation are not liable for its debts. Are the supervisors of CSW personally insolvent? Is it fair to absolve them of liability and allow plaintiffs to pursue only Northern Concrete despite its claim that it was acting in good faith pursuant to its contract with CSW? Does plaintiffs' proposed settlement with CSW encourage collusion?

The court does not have enough information to approve or reject the proposed settlement in this unusual case. Accordingly, the clerk is directed to schedule Plaintiff's motion to approve the settlement with CSW on the court's calendar for a hearing. Counsel for Plaintiffs and Northern Concrete are invited to provide the court with any additional authority they may have bearing on the issues and should be prepared to address them at the hearing.

9

Case 1:16-cv-01283-WCG   Filed 07/25/17   Page 9 of 10   Document 97

## CONCLUSION

For the above reasons, the motion to invalidate any settlements between Defendants and Named Plaintiffs Clint Robinson, Paul Robinson, Shaun Saunders, Michael Owens, and Cornelius Buford (ECF No. 26) is **GRANTED**. Plaintiffs' proposed notice is approved as modified herein and should be delivered to the individual plaintiffs who attempted to withdraw in the most effective manner. The Clerk is directed to set a hearing on the court's calendar at which counsel will appear and address plaintiffs' motion to withdraw all claims against Defendant CSW. (ECF No. 90.)

**SO ORDERED** at Green Bay, Wisconsin this  25th  day of July, 2017.

    s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court