UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DWAYNE MORGAN, *et al.*,

      Plaintiffs,

v.                                                              Case Nos. 16-C-1283, 17-C-1007

NORTHERN CONCRETE CONSTRUCTION INC.,

      Defendant.

## DECISION AND ORDER

Plaintiffs Dwayne Morgan, Clint Robinson, Paul Robinson, Michael Owens, Marques Stewart, Cornelius Buford, Shaun Saunders, Daunte Davis, and Kendall Holmes (the "Named Plaintiffs") filed this action on behalf of themselves and others similarly situated against CSW, Inc. and Defendant Northern Concrete Construction, Inc. ("Northern Concrete"). The amended complaint alleges that joint employers CSW and Northern Concrete failed to pay the plaintiffs minimum wage and overtime pay, as required under the Fair Labor Standards Act ("FLSA"), and straight time and overtime pay, as required under Wisconsin Wage and Hour law. ECF No. 25. This court previously entered an order approving a settlement between the Named Plaintiffs and CSW, and granting the Named Plaintiffs' motion to withdraw all claims against CSW. ECF No. 102. Although the court dismissed CSW from the case at that time, the court has since granted a motion to consolidate the Named Plaintiffs' case with a related action that CSW brought against Northern Concrete. ECF No. 113.

This matter comes before the court on the Named Plaintiffs' motion for conditional certification of a collective action for their FLSA claims against Northern Concrete. ECF No. 67. Specifically, they seek the certification of two classes: (1) all employees who traveled to Wisconsin to work on Northern Concrete jobsites after being referred to Northern Concrete by CSW; and (2) all Northern Concrete direct-hire employees who received a per diem that exceeded their reasonably estimated meal expenses. The Named Plaintiffs have submitted proposed forms for court facilitated notice, and they seek an order requiring Northern Concrete to produce a list of all members of the proposed classes within ten days of this court's order. Also before the court is the Named Plaintiffs' expedited motion under Civil Local Rule 7(h) seeking leave to file a second amended complaint. ECF No. 116. For the reasons set forth below, the Named Plaintiffs' motion for leave to amend their complaint will be denied, and their motion for conditional certification and court facilitated notice will be granted in part and denied in part.

## BACKGROUND

Northern Concrete is a concrete contractor located in Wisconsin. CSW is a Mississippi corporation that supplied concrete finishers and laborers to larger contractors throughout the country. ECF No. 62-3 at 1–2. During 2015 and 2016, Northern Concrete contracted with CSW to engage the services of approximately 50 to 60 temporary concrete workers on various projects throughout Wisconsin. ECF No. 77 ¶ 2; ECF No. 62-3 at 3, 6. With the exception of Marques Stewart (one of the Named Plaintiffs) the workers that CSW assigned to Northern Concrete lived in Mississippi or Tennessee, and the vast majority lived in Mississippi. ECF No. 69 ¶ 2. As a result, these out-of-state workers traveled from their home states to Wisconsin to work on the Northern Concrete projects. *Id.* ¶¶ 3–6. The workers generally traveled to Wisconsin on the day before

2

beginning work, although some chose to spread the drive across the two days before beginning work. *Id.* ¶¶ 3–4.

While staying in Wisconsin, the workers referred to Northern Concrete by CSW stayed in hotels paid for by CSW, Northern Concrete, or at their own expense, depending on the night of the week and the worker's assigned schedule. ECF No. 77 ¶ 5; ECF No. 69 ¶¶ 3–4; ECF No. 62-3 at 4–5. As part of the oral agreements between Northern Concrete and CSW regarding worker placement and compensation, Northern Concrete agreed to a pay a $35 per diem to each worker sent by CSW. ECF No. 77 ¶ 6. Northern Concrete's director of human resources has also submitted a declaration explaining that Northern Concrete similarly "pays $35 per diem for its direct hire employees when [they] . . . travel[] a sufficient distance for work requiring an overnight hotel stay, which typically is at least a 90-minute drive." *Id.* ¶ 7. The declaration states that this $35 per diem "is intended to cover meals *and mileage*." *Id.* (emphasis added). The Named Plaintiffs, however, point to an inconsistency between this declaration and Northern Concrete's earlier responses to two of the Named Plaintiffs' interrogatories, which characterize the per diem as reimbursing direct-hire employees for meals but make no mention of mileage. ECF No. 70-3 at 2–3.

## ANALYSIS

**I. Motion for Conditional Certification**

The Named Plaintiffs' motion for conditional certification identifies two classes for which it argues that conditional certification—and the accompanying court-approved notice—is appropriate. First, the Named Plaintiff seek certification of a class consisting of all workers referred to Northern Concrete by CSW who traveled away from their home communities to work for Northern Concrete.

3

Second, they seek conditional certification of a class consisting of all of Northern Concrete's direct-hire employees who received a per diem from Northern Concrete.

### A. Conditional Certification Standard

The FLSA permits collective actions "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action suit under Federal Rule of Civil Procedure 23, in which unwilling plaintiffs must "opt out" of the class, a collective action under Section 216(b) of the FLSA requires employees or former employees to "opt in" to the class by providing written consent to join the collective action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982) (discussing differences between Rule 23 class action and FLSA collective action). To implement the opt-in procedure in an FLSA collective action, district courts may, in their discretion, facilitate notice to potential plaintiffs. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580.

"The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). "Generally, in order to determine whether the representative plaintiff is 'similarly situated' to potential opt-in plaintiffs, this Court follows a two-step certification approach." *Ehmann v. Pierce Mfg., Inc.*, No. 16-CV-247, 2016 WL 5957275, at *2 (E.D. Wis. Oct. 13, 2016) (citing *Adair v. Wis. Bell, Inc.*, No. 08-CV-280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008)).

4

In the first stage, the court examines whether the plaintiff has demonstrated a "reasonable basis" for believing he is similarly situated to potential class members. *Miller v. ThedaCare Inc.*, No. 15-CV-506, 2016 WL 4532124, at *3 (E.D. Wis. Aug. 29, 2016). The plaintiff must make "at least a modest factual showing" that collective action is appropriate. *Adair*, 2008 WL 4224360, at *4. To establish that factual support, the plaintiff may present affidavits, declarations, deposition testimony, or other documents that "demonstrate some 'factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members.'" *Ehmann*, 2016 WL 5957275, at *2 (quoting *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011)). Although the "modest factual showing" standard is lenient, it is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. Because "a plaintiff's discovery demands upon conditional certification may impose 'a tremendous financial burden to the employer,'" courts must be careful to avoid wasting the parties' time and resources in cases that do not warrant certification. *Id.* at *4 (quoting *Woods*, 686 F.2d at 581). If the class is conditionally certified, notice may be sent to other potential class members, and discovery may proceed.

At the second step, which usually arises on the defendant's motion for decertification, the court must determine whether the plaintiffs who have opted in are, in fact, similarly situated. *Miller*, 2016 WL 4532124, at *4 (citing *Brabazon v. Aurora Health Care, Inc.*, No. 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011)). In this phase, the court assesses whether continuing as a collective action provides efficient resolution in one proceeding of common issues of law and fact. *See Hoffman–La Roche*, 493 U.S. at 170.

5

## B. The Travel Time Class

### 1. Conditional Certification

With regard to their travel time claim, the Named Plaintiffs assert that Northern Concrete is liable to them for unpaid overtime as a joint employer because the Named Plaintiffs' travel time to and from Wisconsin was not counted as hours worked. *See* ECF No. 86 at 14–15; *see also* 29 C.F.R. § 785.39 ("Travel away from home is clearly worktime when it cuts across the employee's workday. . . . The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days."). Had travel time properly been counted as hours worked, the Named Plaintiffs argue, then members of the putative class would have worked more than forty hours during some weeks, for which they should have received overtime pay.

To illustrate the nature of their overtime argument, the Named Plaintiffs cite to Dwayne Morgan's time card for the week from May 29, 2016, through June 4, 2016, which shows that he worked 34.86 regular hours between Monday and Friday that week. ECF No. 70-1 at 2. Assuming that Morgan traveled more than 5.14 hours during working hours on the Sunday preceding this work, they argue, he should have received overtime pay for subsequent hours worked in excess of 40 at the end of the week. The Named Plaintiffs similarly cite to Michael Owens' timecard for July 17, 2016, through July 23, 2016, which shows that he worked 43.31 hours during that week. *Id.* at 56–57. Therefore, they contend, counting travel time from the preceding weekend as hours worked would increase the overtime pay due to him for that week. ECF No. 68 at 6–7. The record contains similar time cards for other Named Plaintiffs as well. *See, e.g.*, ECF No. 70-1.

6

Based on this record, the court is satisfied that the Named Plaintiffs are similarly situated to the proposed travel time class. At the conditional certification stage, "the focus of the inquiry is 'not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." *Jimenez v. GLK Foods LLC*, No. 12-C-209, 2013 WL 3936928, at *3 (E.D. Wis. July 30, 2013) (quoting *Brabazon*, 2011 WL 1131097, at *3). Although Northern Concrete points to several alleged deficiencies in the Named Plaintiffs' evidence, any shortcomings in the evidence do not change the fact that these claims seem to turn on two critical questions: (1) whether Northern Concrete is liable to the proposed travel time class as a joint employer with CSW; and (2) whether the practice of not paying workers referred to Northern Concrete by CSW for their travel time to Wisconsin violated the FLSA. There does not seem to be any dispute that employees referred to Northern Concrete by CSW did not receive compensation for their travel time to Wisconsin, and that their travel time was not otherwise treated as hours worked.

Northern Concrete points to several aspects of the Named Plaintiffs' evidence to argue that individualized damage calculations may be necessary, but travel times from set distances, the main component of damages, can be readily determined. And whether individual inquiries predominate over common questions of law and fact is a question better answered at the second step of the certification analysis. *See Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 314 F.R.D. 449, 456 (E.D. Wis. 2016) ("Factors relevant to the FLSA certification question include any disparate factual and employment settings of the individual plaintiffs, the various individualized defenses available to the defendant, and fairness and procedural considerations." (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001))). Here, the Named Plaintiffs have submitted sufficient

7

evidence for the court to conclude that the Named Plaintiffs are similarly situated with a group of concrete workers referred to Northern Concrete by CSW who were subject to a common practice of not paying compensation for travel time. Accordingly, the Named Plaintiffs' motion for conditional certification will be granted as to the travel time class.

### 2. Notice to the Travel Time Class

Northern Concrete raises several objections to the proposed notice and proposed consent form regarding the travel time class that the Named Plaintiffs submitted with their motion for conditional certification. ECF Nos. 67-1, 67-2. As the Named Plaintiffs acknowledge in their reply brief, Northern Concrete notes that the proposed notice incorrectly states that this case is proceeding in the Western District of Wisconsin. The court expects that the Named Plaintiffs will fix the proposed notice to properly identify this court as the Eastern District of Wisconsin. Aside from that correction, Northern Concrete's objections do not require changes in the proposed notice form.

Of Northern Concrete's six remaining objections, four can be dispatched without extended discussion. Two objections pertain to the attempted withdrawal from this action by several Named Plaintiffs, which this court has addressed in earlier orders and therefore need not further discuss here. Northern Concrete also objects to the Named Plaintiff's use of the phrase "the statute of limitations clock is running," but read in context this factual statement does not have the coercive power that Northern Concrete perceives. Northern Concrete similarly objects to the statement that "[t]he Plaintiffs contend that Northern Concrete was your employer when it controlled your hiring, firing, compensation, and worksite supervision." But because this is an accurate characterization of the

8

Named Plaintiffs' claims and includes the qualifying language "Plaintiffs contend," this statement is not misleading.

Northern Concrete next objects that the proposed notice (as well as the proposed consent form) is misleading because it indicates that the suit seeks to recover unpaid overtime. Specifically, the proposed notice states: "The lawsuit alleges . . . that you may be entitled to additional overtime pay once your travel time is counted as hours worked." ECF No. 67-1 at 1. The Named Plaintiffs, however, have made clear throughout their briefs that their objective is to recover unpaid *overtime*, so opt-in plaintiffs whose pay records do not establish hours worked in excess of forty in a given week, even after including travel time, would not have any right to recover overtime never earned. Because conditional class members could recover only overtime pay actually earned, the notice is not misleading with regard to travel time.

Finally, Northern Concrete alleges that the proposed notice misleads potential class members by stating that they will be represented by the Previant Law Firm if they decide to opt into the lawsuit. Northern Concrete argues that the proposed notice should inform potential plaintiffs that they have the option to retain their own counsel or bring an individual lawsuit. The proposed notice, however, specifically states, "You will be free to file your own lawsuit, if you wish to do so." *Id.* at 2. This statement appears at the end of the section entitled "Effect of Joining This Lawsuit." *Id.* In a collective action, the proposed notice's statement explaining the effect of joining the lawsuit coordinated by collective action counsel suffices to inform members of the proposed class. *See Espenscheid v. Direct USA, LLC*, No. 09-CV-625-bbc, 2010 WL 2330309, at *12 (W.D. Wis. June 7, 2010) ("[A]llowing each opt-in plaintiff to have his or her own lawyer is simply not workable. Potential plaintiffs who want a different lawyer are free to take action on their own instead of opting

9

into the suit, as the notice already explains." (quoting *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009))).

### C. The Per Diem Class

The Named Plaintiffs' also seek certification of a conditional class consisting of Northern Concrete's direct-hire employees who received per diem payments. Specifically, the Named Plaintiffs allege that Northern Concrete paid its direct-hire employees a per diem that exceeded their actual meal expenses; accordingly, they argue, Northern Concrete should have included the excess portion of the per diem payment in the regular rate of pay when calculating overtime payments. Based on the record, however, the court cannot conclude that the Named Plaintiffs have made an adequate showing that any one of them is similarly situated with the putative class of Northern Concrete employees who received per diem payments. Conditional certification of the proposed per diem class therefore is not appropriate.

When calculating an employee's overtime rate of pay, an employer may exclude from the employee's regular rate "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer," as well as "other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). However, "only the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." 29 C.F.R. § 778.217(c). Moreover, reimbursements for "normal everyday expenses," such as "traveling to and from work, buying lunch, paying rent, and the like," are not excludable. *Id.* § 778.217(d).

10

As an example of a per diem payment that exceeded an employee's reasonable expenses, the Named Plaintiffs' brief in support of their motion for conditional certification primarily emphasizes Daunte Davis' pay records from the week of May 15 to May 21, 2016, when he worked on a project in Waunakee, northwest of Madison. His timecard and pay stub for that week show that he received a $35 per diem on all six days that he worked that week. ECF No. 70-4. His pay stub shows a regular rate of pay of $17 per hour and an overtime rate of pay of $25.50 per hour, 1.5 times the regular rate of pay. *Id.* at 3. The per diem payment appears as a separate line item on the pay stub. *Id.* The address for Davis listed on his pay stub suggests that he lived in Milwaukee. *Id.* Pointing specifically to Davis' pay stub records for Saturday, May 21, 2016, the Named Plaintiffs argue that, because his shift ended at 12:15 p.m. and allowed him ample time to return to Milwaukee for dinner, his receipt of a $35 per diem was excessive. The record also contains pay stubs from various weeks for an additional twelve Northern Concrete employees who received overtime pay that did not account for per diem payments received during the same week. ECF No. 70-5.

Northern Concrete forthrightly acknowledges its general policy of paying a $35 per diem to direct-hire employees who travel a sufficient distance, usually at least a 90-minute drive, requiring an overnight hotel stay. ECF No. 77 ¶ 7. But Northern Concrete's mere acknowledgement of this general policy does not automatically subject it to collective action under the FLSA. "In determining whether individuals are similarly situated, the court 'need not accept the plaintiff's allegations as true.'" *Pecor v. North Point EDC Inc.*, No. 16-C-1263, 2017 WL 3723600, at *4 (E.D. Wis. June 9, 2017) (quoting *Nehmelman*, 822 F. Supp. 2d at 751). Considering the whole record, the Named Plaintiffs have not offered compelling evidence that the per diem payments were unreasonably excessive. With their reply brief in support of their motion for conditional certification, the Named

11

Plaintiffs submitted two United States General Services Administration (GSA) documents showing the 2016 monthly per diem rates in Wisconsin for lodging and for meals and incidental expenses. ECF Nos. 87-3, 87-2. Returning to the Daunte Davis example, the GSA documents support a per diem rate of $26 for dinner alone, in the Madison area. *Id.* As noted above, there is a factual dispute as to whether Northern Concrete paid the per diem for meal expenses alone or for both meal and mileage expenses. Considering a $26 dinner per diem rate in conjunction with mileage costs for traveling between Waunakee and Milwaukee suggests $35 is not an objectively unreasonable or excessive reimbursement rate. Consequently, the Named Plaintiffs fall short of showing that Daunte Davis, much less a similarly situated class of Northern Concrete employees, was subject to a policy that resulted in Northern Concrete's failure to include excess per diem payments in the regular rate for purposes of calculating overtime pay.

The nature of the Named Plaintiffs' per diem claim is ultimately not amenable to efficient resolution on a collective basis. Unlike the calculation for the travel time class, determining whether the per diem reasonably approximated any individual employee's expenses apparently turns on highly individualized factors. These include: the distance between the particular work site and the employee's home; whether the employee stayed in a hotel; whether and where the employee ate breakfast, lunch and dinner; and whether the employee drove his own vehicle, a company truck, or car-pooled with another employee. Moreover these various contingencies that determine each employee's actual expenses vary from job to job and even from day to day. Given the primacy of these individualized inquiries even to determine liability, let alone damages, the court concludes that

12

the Named Plaintiffs have not made an adequate showing that they are similarly situated with members of the proposed per diem class, and the motion for conditional certification will therefore be denied as to this class.

**II. Motion for Leave to File a Second Amended Complaint**

Finally, the Named Plaintiffs have moved for leave to file an amended complaint substituting David Mannes for Daunte Davis as the Named Plaintiff for the claim of Northern Concrete's direct hire employees. The Named Plaintiffs explain that they have not been able to contact Daunte Davis since April 2017. ECF No. 116 ¶ 3. Mannes allegedly worked for Northern Concrete as a direct-hire employee during the summer of 2017. *Id.* ¶ 4.

Given the court's decision denying conditional certification of the per diem class, the Named Plaintiffs' motion is moot. Even aside from this, it seems doubtful that Mannes would be a proper substitute for Davis since Mannes was not a member of the class Davis sought to represent at the time he brought his claim on January 31, 2017. Mannes did not work for Northern Concrete until the summer of 2017, and thus would have had no standing to assert such a claim at that time. In any event, given the denial of the Named Plaintiffs' motion for conditional certification of the per diem class, the motion to amend is denied. Mannes may of course file a new action against Northern Concrete if he wishes to assert a claim against it, but this suit is not the appropriate setting for him to do so. In the meantime, the Named Plaintiffs should advise the court and counsel for Northern Concrete whether Davis' per diem claim should be dismissed for failure to prosecute within the next ten days.

**IT IS THEREFORE ORDERED** that the Named Plaintiff' expedited motion for leave to file a second amended complaint (ECF No. 116) is **DENIED**. Plaintiffs are directed to advise the

13

court and counsel for Northern Concrete whether Davis' per diem claim should be dismissed for failure to prosecute within the next ten days.

**IT IS FURTHER ORDERED** that the Named Plaintiffs' motion for conditional certification (ECF No. 67) is **GRANTED** as to the travel time class and **DENIED** as to the per diem class. The travel time class is certified as follows: All individuals referred to Northern Concrete by CSW who traveled from out of state to work for Northern Concrete in Wisconsin.

**IT IS ALSO ORDERED** that the Named Plaintiffs' proposed notice form (ECF No. 67-1) and proposed consent form (ECF No. 67-2) for the travel time class are **APPROVED**, subject to the correction discussed above. Members of the conditional class shall have 45 days from the mailing of the notice to opt into this action.

**IT IS FURTHER ORDERED** that Northern Concrete shall produce within 10 days of the date of this order a list, in an electronic importable format, containing the names and addresses of all individuals referred to Northern Concrete by CSW who worked on a Northern Concrete jobsite in Wisconsin on or after September 26, 2013.

Dated this 28th day of December, 2017.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court

14

Case 1:16-cv-01283-WCG   Filed 12/28/17   Page 14 of 14   Document 119